## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LENOY A. W.,                          )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )     No. 19 CV 8452
                                      )
KILOLO KIJAKAZI,                      )     Judge Thomas M. Durkin
Commissioner of Social Security,      )
                                      )
          Defendant.                  )

## MEMORANDUM OPINION AND ORDER

Lenoy A. W. ("Claimant") brings this action pursuant to 42 U.S.C. §§ 405(g) for judicial review of the final decision of the Commissioner of Social Security denying Claimant's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties filed cross motions for summary judgment. Dkt. 12; Dkt. 20. For the following reasons, Claimant's motion is granted, and the Commissioner's is denied.

## Background[1]

Claimant is a 44-year-old man with a twelfth-grade education. R. 66. He lives with his elderly aunt who is a retired nurse. *Id*. at 65-66. Claimant worked as a carpenter from February-June 2006, and as a restaurant attendant from October-December 2006. *Id*. at 230. Additionally, beginning in approximately 2004 until July 2010, Claimant worked as a telemarketer for various companies. *Id*. at 67-68, 230.

---

[1] References to the Administrative Record (Dkt. 7) are cited as R. #.

Some of those positions required Claimant to make door-to-door sales, and to frequently lift and carry products weighing over 25 pounds, and at times up to 50 pounds, while in other telemarketer positions, Claimant simply made phone sales. *Id.* at 66-68, 70-71, 243, 303. Claimant worked with stock and inventory at a liquor store from February 2012 to June 2013, lifting 50 to 100 or more pounds. *Id.* at 245. From August 2013 to December 2015, Claimant worked as a cell operator, and was responsible for cleaning and maintaining machinery, climbing high ladders, operating forklifts, and lifting upwards of 100 pounds. *Id.* at 230, 244, 302-303.

Most recently, Claimant worked for a moving company from June 2016 to August 2016 helping move, pack, and lift heavy material. *Id.* at 70, 243. Claimant has not worked since he left that job. *Id.* at 74.

## I.  Procedural History

Claimant filed an application for SSI and DIB in August 2016 alleging disability since July 2016 due to "shoulder and arm problems." *Id.* at 93, 192, 199, 224. His claim was denied in October 2016, and again upon reconsideration in February 2017. *Id.* at 136-140, 147, 151. Claimant then filed a timely request for a hearing before an Administrative Law Judge ("ALJ"), which was held in February 2018. *Id.* at 53, 156. Claimant was not represented at the hearing. In an October 2018 decision, the ALJ upheld the denial of benefits. *Id.* at 36-52. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *Id.* at 1. Claimant then sought judicial review pursuant to 42 U.S.C. § 405(g). Dkt. 1. Claimant last met the insured status requirements on

December 31, 2018. As such, his disability must be established on or before then to qualify for benefits. R. 42; 20 C.F.R. § 404.131.

## II. Medical and Other Evidence

The evidence before the ALJ is addressed chronologically below.

*2016.* On July 26, 2016, Claimant was seen at the Jackson Park Hospital emergency room complaining of "moderate" lower back pain he rated at 8 out of 10. R. 423. He was prescribed Ibuprofen for pain management and discharged. *Id*. at 368. Two weeks later, Claimant saw Dr. Bharat Naik for pain in his right shoulder, complaining that he had dislocated his right arm and had dislocated his left shoulder in the past. *Id*. at 340, 345. Claimant also reported leg pain, body aches, and chronic fatigue. *Id*. at 340. X-rays of Claimant's shoulders appeared normal except for a "question of mild grade 1 left acromioclavicular joint separation."[2] *Id*. at 541. Dr. Naik diagnosed Claimant with right shoulder pain and prescribed Motrin and Lidocaine ointment. *Id*. at 540. Claimant returned to Dr. Naik about a week later as directed, reporting bone pain and muscle weakness. *Id*. at 339. He was diagnosed with vitamin D deficiency and referred for orthopedic consultation and management. *Id*.

On September 1, 2016, Claimant again visited the Jackson Park Hospital emergency room complaining of right shoulder pain. He claimed to have dislocated his shoulder that morning trying to remove something from his car. *Id*. at 337.

---

[2] In a Grade 1 acromioclavicular joint separation, a slight separation occurs between the highest point of the shoulder and the clavicle. Acromioclavicular joint separation is distinct from "shoulder dislocation," which involves the glenohumeral joint. *See* https://en.wikipedia.org/wiki/Acromioclavicular_joint (last visited July 29, 2021).

3

Claimant's X-rays were normal and he was discharged in stable condition. *Id.* Claimant returned to Dr. Naik for a follow-up appointment the following week and was again told to consult with orthopedics. *Id.* at 338.

On October 12, 2016, Claimant met with orthopedic surgeon Dr. Surrenthia Parker at St. Bernard Hospital for right shoulder pain. *Id.* at 358, 370. Physical examination showed Claimant had full strength in his shoulder, but moderately decreased range of motion. *Id.* at 360, 371. X-rays revealed no acute fracture or dislocation and normal joint alignment. Dr. Parker recommended physical therapy and a shoulder specialist consult if Claimant's problems continued. *Id.* at 360-62.

The next day, medical consultant for the SSA Dr. Charles Kenney reviewed Claimant's file in connection with his disability claim. Dr. Kenney opined that Claimant could perform medium work but could reach with his right arm including overhead only occasionally.[3] *Id.* at 97-99, 107. Dr. Kenney also concluded that Claimant: (1) could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, and was otherwise unlimited in his ability to lift and/or carry, *id.* at 97-98; (2) could stand and/or walk with normal breaks for six hours in an eight-hour workday and sit for a total of six hours in an eight-hour workday, *id.* at 97; and (3) could frequently crawl and occasionally climb ladders/ropes/scaffolds, *id.* at 98, 107. Dr. Kenney further opined that Claimant was not limited in his ability to climb

---

[3] "Medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," and "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday." 20 C.F.R. § 404.1567(c); SSR 83–10, 1983 WL 31251, at * 6 (1983).

ramps/stairs, balance, stoop, kneel, and crouch, or in handling (gross manipulation), fingering, and feeling. *Id.* at 98-99, 107. Claimant was therefore deemed not disabled.

At Dr. Naik's direction, Claimant attended physical therapy five times between November and December 2016 for right shoulder instability and pain. *Id.* at 380-81. Claimant's progress notes from those sessions reflect that his range of motion, pain, and stability improved and that his right shoulder had not dislocated since he began therapy, but that he was still in moderate pain and had high-fear avoidance. *Id.* Claimant also presented to internal medicine specialist and geriatrician Dr. Sharon Mangum on December 8, who recommended that Claimant bring a copy of his job description and "ortho notes" to his next appointment, but who apparently did not prescribe any medication or other treatment at that time. *Id.* at 364-65.

*2017.* On February 9, 2017, SSA medical consultant Dr. Calixto Aquino reviewed Claimant's medical records on reconsideration of his disability claim. She concluded that Claimant could perform light work with frequent reaching on the right including overhead reaching and frequent pushing and pulling with his right hand. *Id.* at 120-22. Dr. Aquino further concluded that Claimant could: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk with normal breaks for a total of six hours in an eight-hour workday; and sit for a total of six hours in an eight-hour workday. *Id.* at 120. Dr. Aquino found no limitations on Claimant's ability to climb ramps/stairs, balance, stoop, kneel, and crouch, and that he could frequently crawl but only occasionally climb

5

ladders/ropes/scaffolds. *Id.* at 121, 131-32. Finally, Dr. Aquino concluded that Claimant was unlimited in handling, fingering, and feeling. *Id.* at 121.

On March 22, 2017, Dr. Sharon Mangum completed a physical residual functional capacity ("RFC") questionnaire for Claimant in which she stated that she had contact with Claimant every one to two months, and checked boxes to indicate that Claimant could sit 45 minutes and two hours at any one time; could both sit and stand/walk at least six hours in an eight-hour work day; did not need periods of walking around during an eight-hour work day or a job that permits shifting positions at will from sitting, standing, or walking; did not need to take unscheduled breaks; and could occasionally lift and carry less than 10 pounds, rarely 10 and 20 pounds, and never 50 pounds. *Id.* at 390-91. Dr. Mangum also opined that Claimant could never reach his arms, including overhead; could always grasp, turn, or twist objects provided there was no shoulder rotation involved; and could always use his fingers for fine manipulations. *Id.* at 391. Dr. Mangum stated that Claimant's impairments were likely to produce "good days" and "bad days," and require him to miss work about two days every month. *Id.* at 392.

On May 18, 2017, Claimant met with internal medicine specialist Dr. Geetha Govindarajan of Friend Family Health Center who in turn referred him to physical therapy for shoulder dislocation and treated him for hemorrhoids. *Id.* at 388. It is unclear whether Claimant attended physical therapy pursuant to that referral, but Claimant represents that he saw Dr. Govindarajan again in December 2017, and that

she prescribed Baclofen for pain and advised that if the dislocations continue, surgery may be necessary. *Id*. at 305-06.

On December 30, 2017, Claimant visited the Jackson Park Hospital emergency room complaining of moderate left shoulder pain and reporting a possible dislocation while trying to get out of bed the night before. *Id*. at 557. Claimant also reported that his shoulder had dislocated again that morning and that he could barely move his arm. He described his pain as 8 out of 10. *Id*. His range of motion in his left arm was 0 out of 5 and 1 out of 5 on the right. *Id*. at 560. Claimant's X-ray was negative for fracture or dislocation, but he was diagnosed with recurrent dislocation of the shoulder and recommended to follow-up with Dr. Parker. *Id*. at 562-63.

*2018.* Claimant saw Dr. Parker about a month later for the same dislocation. *Id*. at 532. She diagnosed him with a recurrent dislocated left shoulder and recommended physical therapy. *Id*. at 536. It is unclear whether Claimant attended physical therapy pursuant to that recommendation.[4]

## III.   Hearing Testimony

*Claimant's Testimony.* At the hearing before the ALJ, Claimant—who is right-handed—described his employment as a telemarketer, laborer, and professional

---

[4] Ten months later in November 2018, Claimant presented to Holy Cross Hospital for left shoulder pain. *Id*. at 20. An X-ray of his left shoulder was taken, and Claimant was advised to use a sling for 24 hours, take Ibuprofen, and apply a cold pack. *Id*. at 23-24. Thereafter on April 18, 2019, Claimant visited Friend Family Health Center for a shoulder dislocation and was referred to physical therapy and orthopedics. *Id*. at 7, 10, 12, 13. Claimant submitted these records to the Appeals Council. But because the visits occurred after Claimant's hearing before the ALJ, the Appeals Council could not consider them and advised Claimant of his right to file a new claim if he wanted a determination of his disability after his hearing date. *Id*. at 2.

mover, and explained his history of shoulder dislocations. *Id.* at 66-74, 88. Claimant stated that he hurt his right shoulder after a fall in 2004 or 2005, and that since then and despite not falling on his left shoulder, both shoulders kept "popping out of place." *Id.* at 74. According to Claimant, both are at risk for dislocating at any time, and the associated pain is "deep." *Id.* at 75-76. Claimant testified that he cannot complete household chores and the risk of dislocation interferes with his ability to work full time by limiting his ability to reach, pull, and lift. *Id.* at 76-77. He testified that he is completely unable to reach overhead, and that reaching too far could pop his arm out of place. *Id.* at 78.

Claimant explained that he has gone to the emergency room in the past due to his shoulder dislocations, cannot take long showers, and that too much activity increases the risk of dislocation. *Id.* at 79, 83-84. Claimant stated that he gets help with household chores, dressing, and bathing, and that the Ibuprofen he takes for the pain causes dry mouth, headaches, and diarrhea. *Id.* at 76-77, 81-82.

***Vocational Expert Testimony.*** Vocational expert Susan Entenberg testified at Claimant's hearing. The ALJ asked her to consider a hypothetical individual with Claimant's background who could perform light level work with the ability to frequently push and pull and reach on the right, but who could not reach overhead or rotate his right shoulder, and could only occasionally climb ladders, ropes, or scaffolding. *Id.* at 86-87. Entenberg stated that such an individual could work as a telemarketer or as a door-to-door salesperson as Claimant had previously, or as a

cashier (estimating over 500,000 jobs in the nation), small parts assembler (estimating about 30,000 jobs), or sorter (estimating about 40,000 jobs). *Id.* at 87.

The ALJ then reduced the exertional level of the hypothetical individual to only occasional pushing, pulling, and reaching on the right. *Id.* Entenberg testified that such an individual could perform the same jobs. *Id.* But when the ALJ further reduced the exertional level to no pushing or pulling or reaching on the right, Entenberg indicated that there would be no work in the national economy for that individual, assuming he or she is right-handed like Claimant. *Id.* at 88.

***Turner Letter.*** Claimant's friend of twenty-four years, Erik Turner, wrote a letter on Claimant's behalf dated February 12, 2018. *Id.* at 309. He reported that Claimant had been pushed from behind and fell in 2004, dislocating his shoulder, and that his shoulder had to be put back in place at the Providence Hospital emergency room. *Id.* Turner explained that Claimant had been an active, physical person before this, but has had shoulder problems ever since. *Id.*

## IV. ALJ's Decision

The ALJ determined that Claimant had a severe impairment of right shoulder dislocation, but that Claimant's alleged left shoulder impairment was not severe because there was insufficient medical evidence that the impairment had existed continuously for at least 12 months. *Id.* at 42. After concluding that Claimant's right shoulder impairment did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526), the ALJ discussed the medical evidence—including

treatment notes, imagery, and physical examinations. In so doing, the ALJ noted that no treatment provider had observed a dislocated joint, and that Claimant's diagnostic imagery was largely normal. *Id.* at 44.

The ALJ went on to formulate the Claimant's residual functional capacity, reviewing the opinion evidence alongside the other medical evidence. In so doing, the ALJ assigned "little" weight to Dr. Kenney's SSA medical consultant assessment, reasoning that Dr. Kenney did not have the benefit of reviewing the additional documents present at the reconsideration and hearing levels. *Id.* The ALJ then gave "some" weight to Dr. Aquino's SSA medical consultant opinion, concluding that it was consistent with Claimant's treatment records, which "show that the claimant has received treatment for dislocated shoulders." *Id.*

The ALJ also gave only "some" or weight to Dr. Mangum's opinion, noting his agreement with the portion that indicated that Claimant had no limitations in sitting, standing, or walking, and that Claimant should have no shoulder rotation on the right. *Id.* But the ALJ disagreed with the remainder of the limitations indicated because he found Claimant's treatment records did not support the frequency of Claimant's alleged shoulder dislocations, reflected relatively little treatment for his left shoulder, and did not indicate that Claimant would miss two workdays per month. *Id.* at 45.

Finally, the ALJ afforded "some" weight to Mr. Turner's letter to the extent that it described Claimant's injury, while noting that it did not provide a function-by-

function assessment of Claimant's ability to work, and that Mr. Turner was not a trained medical expert. *Id.*

> Ultimately, the ALJ concluded that Claimant had the RFC to:
>
> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ladders, ropes, and scaffolds; frequently push/pull on the right; frequently reach on the right but not reach overhead; and cannot rotate his right shoulder.

*Id.* at 43.[5] Although the ALJ determined that Claimant's RFC did not allow him to perform the full range of requirements for the light exertion level of work, he concluded—based on the vocational expert's testimony and considering Claimant's age, education, and work experience—that jobs existed in significant numbers in the national economy that he could perform. *Id.* Accordingly, the ALJ found that Claimant was not disabled. *Id.* at 46.

## Standard

Judicial review of a final decision of the Social Security Administration is generally deferential. The Social Security Act requires a court to sustain the ALJ's findings if they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court should review the entire administrative record, but must "not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute

---

[5] Light work is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," or that may "require[ ] a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

[its] own judgment for that of the [ALJ]." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "However, this does not mean that [the court] will simply rubber-stamp the [ALJ's] decision without a critical review of the evidence;" a decision may be reversed if it is not "supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Id.* In addition, the court will reverse if the ALJ does not "explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

"Although a written evaluation of each piece of evidence or testimony is not required, neither may the ALJ select and discuss only that evidence that favors his ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."). Additionally, the ALJ "has a duty to fully develop the record before drawing any conclusions," *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007), and deference in review is "lessened . . . where the ALJ's findings rest on an error of fact or logic." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). In oft-quoted words, the Seventh Circuit has said that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. When the ALJ has satisfied these requirements, the responsibility for deciding whether the claimant is disabled falls on the Social Security Administration, and, if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the ALJ's decision must be affirmed. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

## Analysis

To determine whether an individual is disabled, an ALJ must follow the five-step analysis provided by 20 C.F.R. § 404.1520(a)(4). At step one, if the ALJ determines that the claimant is "doing substantial gainful activity," then the claimant is not disabled, and no further analysis is necessary. If the claimant is not, at step two, the ALJ must determine whether the claimant has a "severe" impairment or combination thereof. If the ALJ finds that the claimant has such an impairment, and the impairment is one provided for in the Social Security regulation listings, then at step three, the ALJ must find that the claimant is disabled. If the impairment is not in the listings, then at step four, the ALJ must assess the RFC the claimant continues to possess despite his impairment. If the claimant's RFC enables the claimant to continue his "past relevant work," then the ALJ must find that the claimant is not disabled. But if the claimant cannot perform past relevant work, at step five, the ALJ must determine whether the claimant "can make an adjustment to other work." If the claimant cannot, he is disabled.

Here, Claimant contends that the ALJ erred at step four by failing to: (1) apply the treating physician rule properly and give sufficient weight to Dr. Mangum's opinion; and (2) adequately develop the record. Dkt. 12 at 1. The Court turns to the second argument first.

## I. The ALJ's Duty to Develop the Record

Claimant argues that remand is required because the ALJ failed to obtain Dr. Mangum's treatment notes even though Dr. Mangum's March 2017 RFC

questionnaire indicated that she had contact with Claimant every 1-2 months. It is true that the ALJ must make a "reasonable effort to ensure that the claimant's record contains, at a minimum, enough information to assess the claimant's RFC and to make a disability determination." *Martin v. Astrue*, 345 Fed. Appx. 197, 201-02 (7th Cir. 2009) (citing 20 C.F.R. §§ 416.912(d), 416.927(c)(3), S.S.R. 96-8p and *Skinner v. Astrue*, 478 F.3d 836, 843-44 (7th Cir. 2007)). And that charge is heightened when a claimant proceeds *pro se. Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir. 2000). But it is the claimant's duty "to bring to the ALJ's attention everything that shows he is disabled." *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994) (citing 20 C.F.R. § 404.1512(a)). And the reasoned judgment of the Commissioner on how much evidence to gather is generally upheld. *Id.* at 692; *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994). As such, only a significant omission warrants remand, and an omission is significant only if the claimant brings forward relevant facts that the ALJ did not consider and explains how he was prejudiced by the failure to gather them. *Luna*, 22 F.3d at 692; *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010).

Claimant, who is now represented by counsel, did not present the missing treatment records, describe their contents, or otherwise explain how they would have changed the ALJ's RFC assessment or disability determination—even after the Commissioner pointed this out in its response brief. *See Martin*, 345 Fed. Appx. at 201-02 (ALJ met burden to develop the record including because claimant did not "provide additional records during the proceedings before the Appeals Council or the

district court, and even now he has not attempted to detail what additional information about his condition the ALJ would have uncovered" and "fails to explain how additional evidence could have led to a finding of disability"); *see also Binion,* 13 F.3d at 246 (noting after concluding that the ALJ fully and fairly developed the record that the formerly *pro se* claimant "presented no new medical evidence to the Appeals Council, the district court, or this court," despite being represented at each such stage). Indeed, Claimant failed even to specify the time period during which Dr. Mangum treated him. Dkt. 12 at 14. Accordingly, the Court cannot determine whether the missing records could have changed the ALJ's opinion. *See Binion*, 13 F.3d at 245 ("[m]ere conjecture or speculation . . . is insufficient to warrant remand").

Moreover, the ALJ asked questions about Claimant's treatment, symptoms, physical limitations, daily activities, and educational and employment background, inquired as to whether there were any other medical records, made copies of records Claimant brought with him to the hearing, added additional medical records received after the hearing, and invited Claimant to submit more information. R. 74-80, 82-84, 89, 310, 550-567. The ALJ also considered records dated after Dr. Mangum's March 2017 RFC questionnaire, including a December 30, 2017 X-ray that found no acute fracture or dislocation, and medical notes from his follow-up visit with Dr. Parker in January 2018. *Id.* at 536, 557, 561. Thus, there was substantial evidence upon which the ALJ could make his decision. *See Jozefyk v. Berryhill*, 923 F.3d 492, 497-98 (7th Cir. 2019) (ALJ sufficiently developed record despite missing medical records where ALJ asked whether claimant had issues gathering evidence or if he had other

documents to present, provided extra time to collect the documents, heard testimony about claimant's limitations, and claimant failed to show how more probing would have changed the outcome). In sum, "[e]ven a *pro se* litigant bears some responsibility for making a record." *See Johnson v. Barnhart*, 449 F.3d 804, 808 (7th Cir. 2006) (denying remand where ALJ requested all medical records from claimant's physician and asked at the hearing whether there were additional documents that should be considered). Claimant has not borne his here.

Nevertheless, Claimant cites *Ferguson v. Barnhart* to support his position that remand is necessary. Dkt. 12 at 14. But that case is distinguishable for at least two reasons. First, the claimant in *Ferguson* submitted the missing records for the court's review. *Ferguson,* 67 Fed. Appx. 360, 367 (7th Cir. 2003). And second, in concluding that the ALJ had failed in his duty to develop the record, the court gave considerable weight to the fact that the claimant was of borderline intellectual functioning and may "not have had the capacity to understand everything that was going on at his hearing." *Id*. at 368; *see also id.* (noting that while the court did not "seek to broaden the responsibilities owed by an ALJ to a *pro se* social security claimant," in cases "where a *pro se* claimant's mental capacity is in question, it is incumbent upon the ALJ . . . to obtain the relevant treatment records"). There is no indication that Claimant is intellectually disabled. Accordingly, the Court declines to remand on this basis.

## II. The ALJ's Assessment of Opinion and Medical Evidence

Claimant next argues that the ALJ failed to properly apply the treating physician rule to Dr. Mangum and give controlling weight to her March 2017 RFC assessment.

An ALJ must evaluate each medical opinion of record. 20 C.F.R. § 404.1527(c).[6] But only a treating physician's opinion may be afforded controlling weight, and then only if it is both well-supported by medical findings and not inconsistent with the remainder of the record. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); 20 C.F.R. § 404.1527(c)(2). If an ALJ declines to give controlling weight to a treating physician's opinion, he must offer "good reasons" for doing so, *Scott*, 647 F.3d at 739, and consider various factors to determine what weight, if any, to afford the opinion, *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). Those factors include: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); 20 C.F.R. § 404.1527(c)(2). A decision to discount a treating physician opinion after considering these factors will stand so long as the ALJ "minimally articulate[d]" his or her reasons for doing so. *Elder*, 529 F.3d at 415 (internal quotation marks omitted).

---

[6] Amendments to the Social Security regulations regarding the evaluation of medical evidence were published on January 18, 2017. 92 FR 5844-84 (Jan. 18, 2017). Because the amendments only apply to claims filed on or after March 27, 2017, all references to the regulations in this opinion refer to the prior version.

Claimant contends that the ALJ failed to give "good reasons" grounded in the above factors for deciding to give only "some" weight to Dr. Mangum's opinion. Dkt. 12 at 8. But the ALJ explained that aside from Dr. Mangum's own RFC assessment, there was little evidence to support Dr. Mangum's determination that Claimant cannot reach in any direction with either arm or would miss two days of work per month. Indeed, and as the ALJ pointed out, while Claimant was diagnosed with frequent shoulder dislocation, his diagnostic imaging was largely normal, and no physician observed a fracture or dislocation during the period at issue. R. 44.

Nevertheless, Claimant is correct that other than inconsistency with and a lack of support for certain aspects of Dr. Mangum's opinion in the record, the ALJ did not consider the requisite factors. In fact, the ALJ did not even acknowledge that Dr. Mangum treated Claimant. But an ALJ need not analyze all of the regulatory factors. *See Henke v. Astrue*, 498 Fed. Appx. 636, 640 n.3 (7th Cir. 2013) (no error where "[t]he ALJ did not explicitly weigh every factor" in explaining her decision to reject the treating physician's report but noted "the lack of medical evidence" supporting the report and "its inconsistency with the rest of the record"). And in any case what Claimant really complains about is the absence of Dr. Mangum's treatment records, which presumably reveal the length, extent, and nature of Claimant's treatment relationship with Dr. Mangum, along with the types of tests she performed. But as explained above, Claimant, who is now represented by counsel, has failed to either

bring these records forward, or explain their import. Accordingly, there was no error here.[7]

Nor did the ALJ err by giving more weight to Dr. Aquino's assessment as Claimant suggests. First, while the ALJ's opinion states that the ALJ afforded "great weight" *and* "some weight" to Dr. Aquino's opinion, it is clear from the RFC that the ALJ assigned only "some" weight to the conclusions of both Dr. Aquino and Dr. Mangum. Indeed, while the ALJ rejected Dr. Mangum's opinion that Claimant could not reach at all, the ALJ's RFC incorporated certain of Dr. Mangum's other recommended restrictions on reaching, despite that they were more limiting than Dr. Aquino's. Specifically, whereas Dr. Aquino opined that Claimant could "frequently" reach in front and overhead on his right, *id.* at 121, the ALJ concluded like Dr. Mangum that Claimant could not reach overhead with his right arm at all, *id.* at 43; *see also Amlet v. Colvin*, 2014 WL 53256, at *14 (N.D. Ill. Jan. 7, 2014) (no error where "ALJ not only considered all medical opinions (from both the treating physician and the consulting physicians)" but also "adopted many of their recommendations and incorporated their impressions into his findings."). Second, it is entirely proper to discount a treating physician's opinion where it conflicts with those of SSA physicians. *See Elder*, 529 F.3d at 415 (declining to afford controlling weight to treating physician's opinion "[i]n light of . . . conflicting medical opinions" from doctors

---

[7] Further, Dr. Mangum's specialty is in geriatric and internal medicine—not orthopedics, so the ALJ's failure to address this factor is no help to Claimant. *See* https://doctor.webmd.com/doctor/sharon-mangum-0633cbae-66e6-4eb2-9c81-973d91df4340-overview.

who performed consultative medical examinations); *see also Micus v. Bowen,* 979 F.2d 602, 608 (7th Cir. 1992) ("[I]t is up to the ALJ to decide which doctor to believe—the treating physician who has experience and knowledge of the case, but may be biased, or . . . the consulting physician, who may bring expertise and knowledge of similar cases—subject only to the requirement that the ALJ's decision be supported by substantial evidence."). Given that Dr. Mangum's opinion that Claimant is unable to reach at all is not supported by the record, there was no error in giving credence to Dr. Aquino's opinion to the contrary. The ALJ "minimally articulated" his reasons for declining to give controlling weight to Dr. Mangum's opinion as required; there was no error here.

Claimant further argues that the ALJ stated incorrectly that Dr. Mangum ascribed no limitations in sitting, standing, or walking, pointing out that Dr. Mangum checked boxes to indicate that Claimant could sit or stand for only 45 minutes or 2 hours at any one time. In so arguing, Claimant acknowledges that it was "not entirely clear what Dr. Mangum meant by this," but that "she clearly did not opine that [Claimant] could sit and stand for more than six hours without interruption" as the ALJ concluded, and it was on the ALJ to recontact Dr. Mangum to clarify. Dkt. 12 at 9. But Dr. Mangum *did* expressly indicate in her RFC questionnaire that Claimant could sit, stand, and walk for "at least 6 hours" in an 8-hour workday and that he did not need to switch positions at will. R. 391. And while the Court agrees that this seems inconsistent with Dr. Mangum's other opinions regarding the limits on Claimant's ability to sit and stand, an ALJ need not recontact a medical source if the

evidence is sufficient to make a disability determination. *See Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009) ("The ALJ has mechanisms to procure additional evidence, including recontacting medical sources, if the evidence was inadequate to reach a decision.") (citing 20 C.F.R. § 404.1512(e)). Claimant has never alleged that he has a condition that affects his ability to sit, stand, or walk. Accordingly, the ALJ is not required to address any such condition or recontact Dr. Mangum regarding the same.[8] *See Skarbek*, 390 F.3d at 504 ("An ALJ is required to consider impairments a claimant says he has, or about which the ALJ receives evidence.") (citing 20 C.F.R. § 404.1512(a)(1)). So this argument also fails.

But Claimant's last argument is a good one. Claimant points out that the ALJ failed to explain why his RFC adopted Dr. Mangum's conclusion that Claimant should have no shoulder rotation on the right, yet at the same time stated that Claimant could "frequently reach on the right" (other than overhead), arguing that these findings are inconsistent. Dkt. 12 at 10; Dkt. 23 at 2-3. The Court agrees; it is difficult to imagine how a person could reach at all without some rotation of the shoulder. In response, the Commissioner simply points out that the ALJ struck a middle ground between Dr. Aquino's more limited reaching restrictions and Dr. Magnum's total prohibition against reaching. Dkt. 21 at 4-5. But that does not address the shoulder

---

[8] To the contrary, Claimant's claims paperwork specifically indicates that he did not have such a condition. *See* R. 259 (Claimant's function report in which he indicated that his condition affects his ability to lift, reach, kneel, complete tasks, concentrate, use hands, and get along with others, but leaving the boxes for "walking," "sitting," and "standing" (among others) unchecked). Nor did he raise any such condition or restrictions at his hearing. *See id.* at 57-90.

rotation inconsistency. And because the vocational expert testified that there are no jobs in the national economy for a person who lacks the ability to reach with his right hand if right-handed, the resolution of this issue may be outcome-determinative.[9]

Ultimately, Claimant may not prevail. But he is entitled to a well-reasoned decision. Accordingly, this case is remanded so the ALJ can reconsider and/or properly explain how his limitation of "no shoulder rotation" on the right is consistent with his conclusion that Claimant can "frequently reach on the right" (other than overhead). Further, because this case is being remanded, and because the ALJ will have an opportunity to take a second look at the record, the ALJ is directed to consider any relevant treatment records from Dr. Mangum in his assessment.[10]

## Conclusion

For the reasons stated, Claimant's motion, Dkt. 12, is granted, and the Commissioner's motion, Dkt. 20, is denied, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

---

[9] The Court also notes the apparent inconsistency between the ALJ's conclusion that Claimant could occasionally climb ladders, ropes, and scaffolds, and yet not reach overhead. But because none of the jobs considered for Claimant by the vocational expert or ALJ involve such climbing, this discrepancy is not material.

[10] Claimant also complains that the ALJ rejected Dr. Mangum's opinion on only a conclusory basis, that his decision does not cite the record, and that the ALJ impermissibly substituted his lay judgment for Dr. Mangum's expertise. But the ALJ articulated and specifically cited the record evidence that in his view contradicted Dr. Mangum's assessment of Claimant's limitations; that is, that Claimant's diagnostic imaging did not show evidence of dislocation, that no treatment provider observed a dislocated joint, and that physical examinations and other treatment records did not reflect the severity of his alleged symptoms. R. 43-45. There was no error in that regard.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: August 2, 2021